Talbot *vs.* Pierce.

Same *vs.* Larue.

ORD. PET.

Case 41.

APPEALS FROM NICHOLAS CIRCUIT.

1. Where an attachment issues upon a proceeding by ordinary petition, the defendant may examine the plaintiff, on motion to quash the attachment, and he may be further examined by plaintiff, (*Code of Prac. Sec.* 570;) and where it has been conducted by both parties no objection is available for want of notice. Affidavits are admissable in opposition to a motion to quash an attachment, and depositions taken upon notice are admissable as affidavits.

2. One partner has a lien upon partnership effects to secure the payment of partnership debts, and it is not a fraud in one to transfer such effects to the other for that purpose, in preference to the claims of his general creditors.

3. The judgment of the circuit court overruling a motion to quash an attachment issued in ordinary proceeding is not final and conclusive, but is subject to the revision of the court of appeals after final judgment, as every other act of the court in the case.

4. A denial, in the answer of a defendant to a proceeding by ordinary petition, in which an attachment is sued out upon affidavit charging fraud, of such fraud, makes an issue to be tried upon motion to discharge the attachment, which motion is to be tried by the court, (*Code of Prac. Sec.* 307,) and the burden of proof lies upon the plaintiff in such case.

5. The refusal of the circuit court to discharge an attachment on motion does not preclude the court from discharging it at the final hearing.

6. It is error to order the sale of attached effects where the defendant has only an undivided interest with one not a defendant. Such person should be made a party by order of the court. (*Code of Prac. Sec.* 67.

Judge MARSHALL delivered the opinion of the court.

October 6.

Case stated.

About the year 1849 Redman & Talbot, who had been vending goods in partnership at the Lower Blue Licks, in Nicholas county, closed their business, and Jesse H. Talbot, one of the firm, formed a new partnership with R. H. Hanson, under the firm of Jesse H. Talbot & Co., for selling goods at the same place, and in fact carried on their business in the same house. In January and February, 1852, Larue and other creditors of the old firm, resident in Maysville, being unable to obtain payment, prepared for coercive measures, and threatened attachments against Talbot. These preparations and threats stirred up also

the creditors of the new firm, residing in Maysville, where both firms seem to have made their purchases; and under the consequent pressure Jesse H. Talbot, whose means were principally in the new firm, executed on the 10th of February a deed of trust, transferring to his partner, Hanson, his entire interest in the firm of Jesse H. Talbot & Co., and also some personal property belonging to him individually, to be applied in satisfaction : 1st. Of the debts due by Jesse H. Talbot & Co. 2d. Of two individual debts of his own, the largest of which is stated to have been for borrowed money carried into the firm. 3d. Of all other individual debts of J. H. Talbot except those in which he is merely security for others; and 4th. Of these security debts. This deed was executed by Talbot at Carlisle, in Nicholas county, shortly after dark on the 10th. Hanson not being present, and being a resident of Paris, accepted the deed on the 12th. On the 10th, in the fore-part of the day, Larue, a creditor of Redman & Talbot, made affidavit at Maysville that his debtors were about to sell, convey, or otherwise dispose of, their property with intent to hinder and delay creditors, &c. He filed his petition in ordinary on the 12th, and obtained an order on the 13th for attaching the property of the two debtors, which was returned as levied on the 15th, in conjunction with other attachments on goods, wares, and merchandize of Jesse H. Talbot & Co., and some personal property. On the 10th of the same month, Pierce and Wallingford, creditors of Jesse H. Talbot & Co., filed their petition, and on the 12th Wallingford made affidavit that the defendants were about to sell, convey, and otherwise dispose of, their property with intent to hinder and delay creditors, &c., which is returned as levied on the 13th, in conjunction with other attachments, and on the same property above mentioned.

The defendants in each case admitted in their answer the debt claimed in the petition, but denied the fraud alleged in the affidavit, and moved to discharge

the attachment. This motion, in the trial of which depositions were read on the side of the plaintiffs, and a motion for a continuance, and also for a jury to try the question of fraud, and for a transfer of the case, or of the question of fraud to the equity docket, having been successively overruled, a judgment was rendered in each case for the debt, with an order that the sheriff sell, for its satisfaction, the attached property, for which forthcoming bonds had been given. The defendants having excepted to each of these adverse opinions, have appealed to this court. The errors assigned in each case question only the proceedings growing out of the attachments, and the opinions of the court in relation to them, and to the evidence offered on the motion to discharge them.

It appears that in each of these cases the party upon whose affidavit the attachment was issued was cross-examined by the defendants, and further examined by the plaintiffs; such examination is authorized by section 570 of the Code of Practice, but the defendants in these cases, excepted to its being read because, as alleged, the notice was not given, as required by the section referred to, of the time when the affiant would be produced for examination; but, as it appears that the examination was actually conducted by both parties, the presumption is that there was sufficient notice; and the objection was properly overruled. With regard to the exceptions to depositions we remark, that as the Code, section 306, authorises affidavits to be used in opposition to the motion to discharge an attachment, when it is based upon affidavits, and as the motions in these cases was based in part at least upon the affidavit of the defendants, to their answers, denying the charge of fraud, by which the burthen of proof seems to have been thrown upon the plaintiffs, who alone introduced evidence upon the motion, the depositions, taken as they seemed to be on notice, may be regarded as affidavits, and as not being subject to the objection that the affiant lived in the county in which the trial was had, or in an ad-

1. Where an attachment issues upon a proceeding by ordinary petition, the defendant may examine the plaintiff on motion to quash the attachment, and may be further examined by plaintiff, (*Code of Practice, sec.* 570.; and where it has been conducted by both parties no objection is available for want of notice. Affidavits are admissible in opposition to a motion to quash an attachment, and depositions taken upon notice are admissible as affidavits.

2. One part-
ner has a lien
upon partner-
ship effects to
secure the pay-
ment of part-
nership debts,
and it is not a
fraud in one to
transfer such
effects to the
other for that
purpose, in pre-
ference to the
claims of his
general credi-
tors.

joining county. There was, therefore, no error to the prejudice of the defendants in admitting the depositions taken at Maysville.

With the exception of the examination of the party on whose affidavit the attachments were issued, the evidence upon the question of fraud is in both cases precisely the same; and whether we consider the cases upon the evidence alone which was retained, or upon that in conjuction with the depositions taken at Carlisle, which were excluded, we are of opinion that there is no sufficient evidence of fraudulent intent in making and accepting the deed, to invalidate that instrument and sustain the attachments. It is not necessary to review the facts in detail. One peculiarity in the case is, that one partner has conveyed his interest in the firm to the other, to secure first the partnership debts, and then his other liabilities, in a designated order. But the other partner had before a lien in equity upon the grantor's interest for the benefit of their joint creditors. The primary object of the deed seems to have been to secure this preference to the joint creditors, against measures on the part of other creditors of the grantor, which threatened to disturb it. Of this the other creditors have no right to complain, and especially as it does not appear that any property upon which they had a peculiar claim has been withdrawn from their reach; moreover, a debtor may secure preferences among his general creditors. It does not appear that it was the object of the deed, or the intent of the parties, to prevent any creditor from receiving payment, but rather to provide for all, and that in an order of succession which they had a right to prescribe, and which cannot be pronounced unjust. And although in this, as in all assignments by debtors, the effect will be to obstruct some creditors in the remedy by which they might secure themselves by judgment and execution, this effect, though contemplated and intended, does not of itself make the deed fraudulent, if the debtor really gives up his property for the payment of his debts, without any

trust or reservation in his own favor by which his creditors may be injured.    The attachments followed so closely upon the attachments, that no opportunity was allowed for any further action by the parties to the deed, which might throw light upon their previous intention.    It seems, however, that Talbot and Hanson are brothers-in-law, and that Talbot, when interrogated by some of the creditors or their attorney, said in substance, that he had selected Hanson as trustee because Hanson would appoint him agent to manage the business; but no unfavorable inference is authorized by these facts, unless upon the assumption that fraud was intended.    Talbot, from his interest in the matter, and from his knowledge of the business, was the most proper person to close the concern, while Hanson's liability for the debts of the firm, and the right and interest which he had in the appropriation of its assets, made it entirely reasonable and proper that his partner should make the assignment to him, if to any body.    His own interest in the firm of Jesse H. Talbot & Co., as well as any other property which he had, was open to the remedies of the creditors of that firm, and it is not probable that he would have concurred in any act by which his partner's interest and effects were to be withdrawn from their appropriate liability.    His declaration that the debts of the old firm should not come upon the new firm, was but an assertion of his right to apply the assetts of his firm first to the payment of its debts —it implied no further obstruction to the creditors of Talbot.

It cannot be assumed upon this record that the firm of J. H. Talbot & Co. is insolvent, on the contrary, the declarations of Talbot, proved by the opposite party, are and have been throughout that that firm will have a large surplus, and that not only its creditors but those of the old firm will be paid.    They were not able to pay their debts in money when they were presented; and finding that their business was to be stopped by attachments for debts of the old and the

TALBOT
vs.
PIERCE.

new firm, the assignment was made to secure the proper application of the effects of the firm, and rather to prevent than to promote delay, which, being injurious to the trustee, it may be presumed that he would avoid. If the assignment had not been made the postponed creditors would not have been suffered to appropriate the assets of the present firm, until its creditors were satisfied or secured; and they will probably obtain satisfaction as soon under the operation of the deed as they would have done by any legal remedy, if it had not been made; and certainly they have not made out, in this proceeding, such a flagrant fraud as would induce the chancellor to deprive Hanson of his rights as a partner, and to take from the general creditors of his firm the advantage which those rights give them, and although the attaching creditors of the new firm may be somewhat postponed, it is only because the deed secures an equality between all creditors of that firm; and this being done without fraud, is equity.

3. The judgment of the circuit court overruling a motion to quash an attachment issued in ordinary proceeding is not final and conclusive, but is subject to the revision of the court of appeals after final judgment, as every other act of the court in the case.

The small amount of property contained in the assignment, in addition to Talbot's interest in the firm, seems to have attracted no attention, and is not regarded as effecting the character of the transaction, and as we are of opinion that the assignment was not made with a fraudulent intent, it follows that in our opinion the attachment should have been discharged; and it also follows, in our opinion, that so much of these judgments as directs the attached property to be taken and sold by the sheriff for their satisfaction, is erroneous, on the ground that the deed is not fraudulent but valid, and therefore secures the appropriation of the attached effects in the order therein prescribed. We do not admit that the judgment of the court, upon the motion to discharge the attachment, is a conclusive determination of the question of fraud, and the liability of the attached effects, and which cannot be brought up for the revision of this court. If there be no right of appeal from the judgment on the motion to discharge, because it is not final, there is an ap-

peal from the final judgment subjecting the property; and such an appeal brings before this court every fact apparent in the record on which the propriety or impropriety of that judgment may depend. If under the Code of Practice the circuit court is itself concluded by its own refusal to discharge the attachment, so that it cannot afterwards discharge it, but must in rendering final judgment order a sale of the attached property; or if, without such special order, the effect of a final judgment after a refusal to discharge the attachment, is to require a sale of the attached property, there is no restriction of the appellate power of this court in such a case; and the importance of the question, and of the rights dependent upon it, require that its determination, and especially upon a mere motion, should be subject to revision if not by the court which made it, at least by an appellate tribunal.

The Code is not as specific as might be desired in regulating the proceedings upon attachments, and especially in those cases in which the attachment is founded, not upon any allegation in the petition, but merely upon a separate affidavit; hence arise the questions in this case as to the effect of the denial in the answer of the fraud alleged in the affidavit. The defendants seem to have considered this denial as making an issue between the parties upon the question of fraud, which gave them a right either to a trial of the facts by a jury or to a transfer of the case, or at least of this issue to the equity side of the court; while on the other side it is contended that the denial, in the answer, of a fact not alleged in the petition or in any adverse pleading, makes no issue between the parties. We have already said that the denial, in the answer sworn to by the defendant, is to be taken as making an issue in the motion to discharge. Section 307, which relates to this motion, evidently intends that it shall be tried by the court, which is to determine upon such evidence as may be adduced, whether the attachments was obtained on false suggestions or without sufficient cause. And we are satisfied that

*Margin:*
TALBOT
*vs.*
PIERCE.

4. A denial, on the answer of a defendant to a proceeding by ordinary petition, in which an attachment is sued out upon affidavit charging fraud, of such fraud, makes an issue to be tried upon motion to discharge the attachment, which motion is to be tried by the court, (*Code of Practice, sec.* 307,) and the burden of proof lies upon the plaintiff in such case.

TALBOT
vs.
PIERCE.

the denial in the answer of the facts charged in the affidavit does not raise such an issue as entitles the party either to a jury or to a transfer of the case or of any part of it to the equity docket.

Whether the denial in the answer should have any other operation than that of requiring proof in support of the attachment on the trial of the motion to discharge it; whether it would authorize the introduction, after the motion to discharge is overruled, of proof to show that the attachment was obtained on false suggestions or without sufficient cause; and whether, in case there were no motion to discharge, the denial in the answer would be a sufficient ground for discharging the attachment on final hearing, or for a reversal of the judgment directing the sale of the attached effects, are questions which, although they may be of great practical importance do not present themselves as necessary for the decision of this case, and need not therefore be considered. It is sufficient to say, that in whatever stage of the proceeding it becomes important to determine whether the facts on which the attachment rests are true or false, the denial of the defendant in his answer will throw the burthen of proof on the party sustaining the attachment.

5. The refusal of the circuit court to discharge an attachment on motion does not preclude the court from discharging it at the final hearing.

We add, that in our opinion the circuit court, notwithstanding its refusal to discharge an attachment on motion may, without additional evidence, discharge it on final hearing; and this court has a right to revise and reverse or affirm the final judgment discharging or enforcing the attachment. The improper discharge, before final judgment, may be remedied by a reinstatement of the attachment by a single judge of this court.

6. It is error to order the sale of attached effects where the defendant has only an undivided interest with one not a defendant. Such

In the case of Larue v. Talbot and Redman, there are two points proper to be noticed, which do not occur in the other case, either of which would be ground for reversing the order which gives effect to the attachment: 1. The attachment was levied upon the goods, wares, and merchandise of J. H. Talbot & Co., and not upon the interest of Talbot alone, and the final

order was that the attached effects should be sold, without excepting the interest of Hanson, who was no party to the debt or to the suit. And, 2d. Hanson was a necessary party as trustee, if not also as partner, and the controversy which related directly to the validity of the conveyance to him could not be determined properly, without his being made a party to maintain his own rights, and those of the *cestui que trusts* whom he represented. And although he might have petitioned to be made a party, since he was at a very early stage apprized of the nature of the suit, the 67th section of the Code makes it the duty of the court to have the person occupying such an attitude made a party and brought into that branch of the case, which was not done.

For these errors in the case of Larue, and for the more important error apparent in both cases, of retaining and giving final effect to the attachments, the final order directing the sale of the attached effects is reversed in each case, and each cause is remanded with directions to discharge the attachment. In the case of Larue v. Talbot and Redman, the judgment for the debt is not appealed from, and therefore does not require affirmance. In the case of Pierce & Wallingford v. Talbot, &c., the defendants appealed from the entire judgment, and as there is no error in the judgment for the debt, the same is in that case affirmed with damages.

R. H. HANSON and DAVIS for appellants; HARLAN, PAYNE, and METCALFE for appellees.